_____

No. 95-3446
_____

United States of America,          *
                                   *
          Appellee,                *
                                   * Appeal from the United States
     v.                            * District Court for the
                                   * Western District of Missouri
Marc D. Rehkop,                    *
                                   *
          Appellant.               *

_____

          Submitted:  March 15, 1996

            Filed:  September 18, 1996
_____

Before McMILLIAN, BEAM and HANSEN, Circuit Judges.
_____

McMILLIAN, Circuit Judge.


     Marc D. Rehkop appeals from a final judgment entered in the United
States District Court[1] for the Western District of Missouri upon a jury
verdict finding him guilty of one count of possession of methamphetamine
with intent to distribute, in violation of 21 U.S.C. § 841(a)(1) and one
count of use of a firearm during and in relation to the offense of
possession with intent to distribute methamphetamine, in violation of 18
U.S.C. § 924(c).  The district court sentenced Rehkop under the federal
sentencing guidelines to 248 months imprisonment, five years supervised
release and a special assessment of $100.00.  For reversal, Rehkop argues
the district court erred in (1) denying his motion to suppress evidence
seized from his vehicle and (2) improperly instructing the jury on

_____

[1]The Honorable Russell G. Clark, United States District Judge
for the Western District of Missouri.

the law applicable to 18 U.S.C. § 924(c).  For the reasons discussed below, we affirm in part, reverse in part, and remand the case to the district court for further proceedings consistent with this opinion.

## I.  Background

The underlying facts are not in dispute.  On August 8, 1994, at approximately 1:30 a.m., Officer Kelly Roth of the Springfield, Missouri, Police Department was on a duty as a uniformed patrol officer in a marked police car.  Officer Roth observed a vehicle at rest in an inside driving lane at the corner of Kansas Expressway and Kearney Street in Springfield.  After observing the vehicle remain stationary through three cycles of an electric traffic light, Officer Roth approached the vehicle, directed his spotlight into the passenger's side window, and observed Rehkop asleep at the wheel.  The spotlight awoke Rehkop.  Rehkop looked at Roth, became startled, looked down at the seat, and drove off through a red light.

Officer Roth followed the vehicle after it ran the red light and contacted a dispatcher with the message that he was following a possible DWI and requested assistance.  He then followed the vehicle southbound on Kansas Expressway and observed it swerving within its own lane four times.  Having observed Rehkop sleep through several cycles of the traffic light, run a red light, and swerve within his lane, Officer Roth believed that Rehkop was driving while intoxicated.  He activated his red lights to stop the vehicle, and Rehkop complied by pulling over into the parking lot of a nearby convenience store.  Officer Roth followed and parked his vehicle so as to block Rehkop's automobile.

Officer Roth testified that after Rehkop stopped he observed Rehkop make a motion in which his head and shoulders bowed forward and downward.  At the time, Roth thought Rehkop was hiding an

alcoholic beverage and instructed him to remain in the car.  Roth then asked to see Rehkop's driver's license.  When Rehkop replied that he did not have one, Roth asked Rehkop to exit his vehicle, and Rehkop complied. At that point, Roth conducted a frisk for weapons and asked Rehkop if he had any weapons on him.  Rehkop responded that  he did not but that there was an unloaded weapon on the back seat of the car.  Officer Roth then handcuffed Rehkop, and another police officer, Officer Pulliam, arrived to assist.  While Pulliam watched Rehkop, Roth looked into the passenger side of the vehicle at the back seat and observed a .45 caliber handgun laying on the floorboard behind the passenger's seat.  When Roth picked up the firearm, it was in the "cocked and locked position," meaning that  the hammer was back and the thumb safety was in position.  Although the firearm did not contain a magazine, Officer Roth observed a bullet in the chamber of the pistol.

Officer Roth also testified that Rehkop appeared lethargic and unable to focus his attention.  There was no odor of alcoholic beverages.  Roth, however, believed Rehkop was under the influence of a narcotic, because Rehkop's eyes were bloodshot and glassy and he appeared to have a delayed reaction to the statements made to him.

After finding the firearm, Officer Roth informed Rehkop that he was under arrest for suspicion of driving while intoxicated and for unlawful use of a weapon.  Officer Roth advised him of his <u>Miranda</u> rights, and Rehkop replied that he understood these rights.  After placing Rehkop under arrest, Roth decided that the vehicle Rehkop had been operating would have to be subjected to a custody tow and impounded pursuant to Springfield's Manual of Administrative Policy.  The manual provides that, when a person is arrested and the vehicle is neither on the owner's property nor in the custody of the owner, a custody tow will be ordered.  Roth testified that he believed that the manual required a vehicle subjected to a custody tow to be searched and inventoried.

During the inventory search, Officer Roth found .45 caliber ammunition and a sealed box. The sealed box was in the back seat on the driver's side. Roth opened the box and discovered several nested plastic bags and felt something soft and warm. He then emptied the contents of the bag on the ground and discovered a gallon freezer bag which contained a soggy, tan substance. Roth asked Rehkop if he thought this bag weighed a pound; Rehkop looked up and replied, "No, five." At that point, Roth resumed his search of the box and found additional gallon bags, which he seized because he suspected them to contain contraband. He also found a nylon pouch in the front seat of the car which contained three extra clips of ammunition. After finding the items in the box, Roth placed Rehkop under arrest for possession of narcotics.

Officer Roth also issued three traffic violation tickets to Rehkop, for careless and imprudent driving, failing to have a driver's license, and driving while intoxicated. Roth testified that he did not have Rehkop's consent to search the vehicle and that he had no reason to believe that there were drugs in the vehicle when he began the inventory. Another police officer who assisted in the inventory search discovered a .45 caliber magazine under the driver's seat.

A subsequent analysis of the soggy, tan substance found in Rehkop's car revealed that the substance was ninety-two percent pure d-methamphetamine. The weight of the materials, exclusive of the packaging, was 1,819.67 grams or 4.01 pounds. Moreover, a special agent for the DEA testified that the value of the methamphetamine would be $108,000 if sold by pounds, $345,000 if sold by ounces, and $600,000 if sold by grams. The special agent testified that the quantity seized was therefore not consistent with personal use.

On August 10, 1994, a federal grand jury returned a two-count indictment in the United States District Court in Springfield,

-4-

Missouri, charging Rehkop with (1) possession with intent to distribute methamphetamine in violation of 21 U.S.C. § 841(a)(1) and (2) use of a firearm during and in relation to a drug trafficking offense in violation of 18 U.S.C. § 924(c).

On April 14, 1995, Rehkop moved to suppress all the evidence seized from his vehicle on the ground that there was no probable cause to support the warrantless search in violation of the Fourth Amendment. After a hearing held on May 10, 1995, the district court issued oral findings and denied the motion to suppress.[2]

After evidence was submitted to the jury on May 11, 1995, the district court instructed the jury on the law of the case. In instructing the jury, the district court refused Rehkop's proposed instruction on Count II for the alleged violation of 18 U.S.C. § 924(c).[3] Over the specific objection of Rehkop, the district

---

[2]On May 11, 1995, during the jury trial of the present case, Rehkop objected to the admission of evidence on the ground set forth in his motion to suppress. The district court overruled Rehkop's objection.

[3]The instruction tendered by Rehkop, which the district court refused to give, provided as follows:

> In order to prove the Defendant guilty beyond a reasonable doubt of the crime charged in Count II of the indictment, the government must prove more than mere possession of a firearm. Rather, there must be some relation or connection between the firearm and the underlying crime of possession of methamphetamine with intent to distribute.

court gave jury instruction number 17 as to Count II.[4]  The jury returned guilty verdicts as to both counts of the indictment.

On September 20, 1995, following a sentencing hearing, the district court sentenced Rehkop under the federal sentencing guidelines to 248 months imprisonment, five years supervised release and a special assessment of $100.00.  This appeal followed.

## II.  Discussion

For reversal, Rehkop first argues the district court erred in denying his motion to suppress evidence seized from his vehicle

---

[4]Jury Instruction Number 17 provided:

> The crime of using a firearm during and in relation to drug trafficking, as charged in Count Two of the indictment, has two essential elements, which are:
>
> One, the defendant committed the crime of possession with intent to distribute methamphetamine; and,
>
> Two, during and in relation to the commission of that crime, the defendant knowingly used a firearm.
>
> The phrase "used a firearm" means having a firearm available to aid in the commission of the crime of possession with intent to distribute methamphetamine.
>
> For you to find the defendant guilty of the crime charged under Count Two, the government must prove all of these essential elements beyond a reasonable doubt; otherwise, you must find the defendant not guilty of this crime.

because the warrantless search violated the Fourth Amendment. Specifically, Rehkop contends that Officer Roth lacked probable cause to make the initial traffic stop of the vehicle and that the stop was merely pretextual. Rehkop recognizes that a traffic

violation, no matter how minor, creates probable cause to stop the driver of a vehicle. United States v. Barahona, 990 F.2d 412, 416 (8th Cir. 1993) (Barahona) (citing United States v. Cummins, 920 F.2d 498, 500 (8th Cir. 1990), cert. denied, 502 U.S. 962 (1991)). He argues, however, that weaving within one's lane of traffic does not constitute a traffic violation. Rehkop therefore maintains that because he was not lawfully in custody at the time of the inventory search of his automobile, the district court should have suppressed the evidence seized from his vehicle.

The Supreme Court has recently clarified that the historical facts supporting probable cause are reviewed for clear error, while the determination of probable cause is subject to de novo review. Ornelas v. United States, 116 S. Ct. 1657, 1662-63 (1996) (determination of whether probable cause existed for search, requiring application of facts to law, is mixed question of law and fact and should be reviewed de novo). The Supreme Court stated that, in determining whether probable cause existed, "a reviewing court should . . . give due weight to inferences drawn from those [historical] facts by resident judges and local law enforcement officers." Id. at 1663.

In the present case, the district court found that Rehkop had remained stationary through three rotations of traffic lights and had then weaved within his own lane four times. I Trans. 63. Although the district court did not address whether or not Rehkop had driven through a red light, we note that Rehkop concedes this fact in his brief and that the record supports such a finding. See Brief for Appellant at 8; I Trans. 6. The district court concluded that Officer Roth had probable cause to stop Rehkop because (1) Rehkop appeared to be under the influence of an intoxicating substance and (2) Rehkop's driving posed a hazard to the public. See I Trans. 63. In addition, the district court determined that

Officer Roth had acted properly in impounding the vehicle, because Roth, who had no driver's license and who appeared to be under the

influence of narcotics, could not have lawfully driven away from the scene.

Upon de novo review, giving due weight to the district court's historical findings and inferences, we agree that Officer Roth had probable cause to stop Rehkop, based upon the traffic violations committed by Rehkop[5] and Roth's reasonable belief that Rehkop was driving while intoxicated. See Barahona, 990 F.2d at 416; see also United States v. Richards, 967 F.2d 1189, 1192 (8th Cir. 1992) (stop of defendant for traffic violation was not pretextual so as to render ensuing search of defendant's vehicle unconstitutional, where police officer testified that he had observed defendant's vehicle make a swerving lane change and drift momentarily off the road). We also conclude that Officer Roth properly impounded Rehkop's vehicle, in light of the fact that Rehkop had no driver's license and appeared to be under the influence of narcotics.

We also uphold the search of Rehkop's automobile as a valid inventory search. It is well-settled that a police officer, after lawfully taking custody of an automobile, may conduct a warrantless inventory search of the property to secure and protect vehicles and their contents within police custody. Colorado v. Bertine, 479 U.S. 367, 372 (1987); Illinois v. Lafayette, 462 U.S. 640, 646 (1983). In the present case, Officer Roth discovered the methamphetamine in Rehkop's vehicle while conducting a lawful inventory search of the vehicle. Therefore, we hold that the district court did not err in denying Rehkop's motion to suppress.

---

[5]Although, as noted above, there is ample evidence in the record to support a finding that Rehkop drove through a red light, Officer Roth would have had probable cause to stop him even in the absence of this fact.

Rehkop next argues that the district court erred in refusing to instruct the jury that, in order to convict Rehkop under 18 U.S.C. § 924(c), the government would have to prove more than mere

possession of a firearm. The district judge informed the jury that a defendant "uses a firearm" whenever he has "a firearm available to aid in the commission of . . . [a drug trafficking offense]." Jury Instruction No. 17; Appellee's Add. at 9. In light of the Supreme Court's supervening decision in <u>Bailey v. United States</u>, 116 S. Ct. 501, 505-08 (1995) (<u>Bailey</u>), we hold that the district court committed error. In <u>Bailey</u>, the Supreme Court held that the term "use" in 18 U.S.C. § 924(c)(1)[6] "requires evidence sufficient to show an active employment of the firearm by the defendant, a use that makes the firearm an operative factor in relation to the predicate offense." 116 S. Ct. at 505. The Court specifically determined that the mere storage of a weapon near drugs or drug proceeds does not constitute active use. <u>Id.</u> at 508. In the present case, the district court's § 924(c) instruction did not set forth the standard for "use" now required under <u>Bailey</u>. The instruction, therefore, now constitutes error. <u>See</u> <u>U.S. v. Webster</u>, 84 F.3d 1056, 1067 (8th Cir. 1996) ("in deciding whether an error is clear under current law, the proper focus is the law applicable on appeal rather than at trial"). Moreover, because the indictment only charged Rehkop under the "use" prong of § 924(c), and not under the "carry" prong, the government has conceded in its brief and at oral argument that Rehkop's § 924(c) conviction should be vacated and remanded. We therefore hold that the district court's instructional error "affected the outcome of the district court proceedings." <u>United States v. Olano</u>, 507 U.S. 725, 734 (1993). Accordingly, we reverse the § 924(c) conviction under

---

[6]18 U.S.C. § 924(c)(1) requires the imposition of specified penalties if the defendant "during and in relation to any crime of violence or drug trafficking crime . . . uses or carries a firearm."

Count II, vacate the sentence, and remand the case to the district court.[7]

---

[7]We note that the government may, but need not, seek a new trial on this count.

The government requests that we also vacate the sentence as to Count I, possession of methamphetamine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1). The government correctly observes that a reversal of Rehkop's § 924(c) conviction may render appropriate a two-level enhancement under § 2D1.1(b)(1) of the federal sentencing guidelines. Section 2D1.1(b)(1) provides that it is a specific offense characteristic "[i]f a dangerous weapon (including a firearm) was possessed," warranting a two-level sentence increase. U.S.S.G. § 2D1.1(b)(1).

The district court did not consider § 2D1.1(b)(1) because Rehkop's conviction on the § 924(c) charge precluded the application of a two-level enhancement under § 2D1.1(b)(1). See U.S.S.G. 2K2.4, comment. (backg'd.) (in order to avoid double counting, when a sentence is imposed under 18 U.S.C. § 924(c) in conjunction with a sentence for an underlying offense, any specific offense characteristic for explosive or firearm discharge, use, or possession is not applicable). Because we have vacated Rehkop's § 924(c) conviction, however, "this double counting concern is eliminated and it is appropriate to remand to the district court to allow it to resentence" Rehkop. United States v. Thomas, 1996 WL 471336, at *8 (8th Cir. Aug. 21, 1996) (citing United States v. Roulette, 75 F.3d 418, 426 (8th Cir. 1996)). Therefore, we vacate Rehkop's sentence under Count I to provide the district court an opportunity to consider whether a sentence enhancement under U.S.S.G. § 2D1.1(b)(1) is warranted.

## III. Conclusion

For the foregoing reasons, we hold that the district court properly denied Rehkop's motion to suppress evidence seized from his vehicle but erred in giving the jury instruction on 18 U.S.C.

§ 924(c).  Accordingly, we affirm Rehkop's § 841(a)(1) conviction, reverse his § 924(c) conviction, vacate his sentence, and remand

the case to the district court for further proceedings consistent with this opinion.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.