# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 03-1071

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Northern District of Iowa. |
| Anita Louise Speller, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted:  October 22, 2003

Filed:  January 30, 2004

_____

Before RILEY, BEAM, and SMITH, Circuit Judges.

_____

RILEY, Circuit Judge.

Anita Louise Speller (Speller) pled guilty to conspiracy to distribute 500 grams or more of cocaine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B) and 846; conspiracy to distribute cocaine and cocaine base within 1000 feet of a protected location, in violation of 21 U.S.C. §§ 846 and 860; and criminal forfeiture under 21 U.S.C. § 853.  Denying Speller's request for a mitigating role reduction, the district

court[1] sentenced Speller to 130 months imprisonment. Speller appeals, arguing the district court erred in denying her request for a role reduction. We affirm.

## I.  BACKGROUND

In 1999, Speller's husband, Herbert Speller (Herbert), was released from prison and reestablished connections to drug dealers, eventually connecting with cocaine and marijuana distributors in California. Herbert received cocaine and marijuana shipments several times a month at Herbert's and Speller's residence at 114 Quincy Street in Waterloo, Iowa. Speller signed for the packages, knowing they contained cocaine. Herbert resold and delivered the cocaine to the "Click," a group with which Speller's son, John King (King), was affiliated. Speller also delivered packages of cocaine to Herbert's customers. The Click used "the house on the hill," located at 220 Lewis Street in Waterloo, which Speller inherited from her father, to distribute crack cocaine. The Click also distributed crack cocaine in Sullivan Park, a Waterloo playground. King and other Click members sold about two ounces of crack cocaine per day from January 1999 to February 2000. They obtained the crack cocaine from Herbert, who, before his arrest in February 2002, had obtained over 45 kilograms of cocaine and over 1000 pounds of marijuana.

Herbert's and Speller's residence is within 1000 feet of Sullivan Park. Drugs and drug proceeds were stored in the home, and drug suppliers and couriers called the home or came by to meet with Herbert about drug-related matters. Speller knew Herbert used the home for these illegal purposes, and Speller personally distributed over 50 grams of crack cocaine from the home during a series of drug sales. Also, Speller once traveled with Herbert to Des Moines, Iowa, to pick up 3 kilograms of cocaine and 15 pounds of marijuana from California drug couriers. In connection

---

[1]The Honorable Linda R. Reade, United States District Judge for the Northern District of Iowa.

with the trip, Speller had several conversations with the couriers and helped the couriers locate Herbert to complete the transaction.

The government charged Speller and King[2] with conspiring to distribute 50 grams or more of cocaine base, conspiring to distribute 500 grams or more of cocaine, conspiring to distribute cocaine base within 1000 feet of a playground, and criminal forfeiture. 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), 841(b)(1)(B), 846, 853, 860. Speller pled guilty to conspiring to distribute 500 grams or more of cocaine, conspiring to distribute cocaine and cocaine base within 1000 feet of a playground, and criminal forfeiture. At sentencing, the district court assigned Speller a base offense level of 33, supported by Speller's personal distribution of at least 50 grams of crack cocaine and her involvement in distributing drugs within 1000 feet of a playground. Speller received a three-level reduction for acceptance of responsibility, resulting in a total offense level of 30. With a criminal history category of III, the sentencing range was 121-151 months. The district court denied Speller a two-level minor role reduction, because Speller was only held responsible for drugs she personally distributed and not for any drugs others distributed. The district court sentenced Speller to 130 months imprisonment and eight years supervised release.

## II.    DISCUSSION

"'The correct application of the guidelines is a question of law subject to de novo review,' while a 'factual determination of the sentencing court is reviewed under a clearly erroneous standard.'" United States v. Tirado, 313 F.3d 437, 440 (8th Cir.), cert. denied, 123 S. Ct. 73 (2003) (quoting United States v. Collins, 104 F.3d 143, 144 (8th Cir. 1997)). "Whether a defendant qualifies for a role reduction is a question of fact." United States v. Thurmon, 278 F.3d 790, 792 (8th Cir. 2002). The Sentencing Guidelines provide a base offense level reduction of two to four levels to

---

[2]King was charged with additional drug offenses for which Speller was not charged.

reflect a mitigating role in an offense for defendants "substantially less culpable than the average participant" in the offense. U.S.S.G. § 3B1.2, cmt. n.3(A). "A two-level reduction is authorized where a defendant's role is minor but not minimal." United States v. Ramos-Torres, 187 F.3d 909, 915 (8th Cir. 1999). A minor participant is a defendant "who is less culpable than most other participants, but whose role could not be described as minimal." U.S.S.G. § 3B1.2, cmt. n.5.

Speller has the burden to prove she is entitled to the minor participant role reduction. United States v. Surratt, 172 F.3d 559, 567 (8th Cir. 1999). "To determine whether [Speller] was entitled to a reduction for [her] role in the offense, we must first define the relevant conduct for which [s]he was held accountable when the district court assessed [her] base offense level." Thurmon, 278 F.3d at 792. This is the crux of Speller's appeal. The "same relevant conduct is used not only in determining the defendant's base offense level, but also for any role in the offense adjustments made pursuant to Chapter 3 of the Guidelines." United States v. McCarthy, 97 F.3d 1562, 1574 (8th Cir. 1996). "The propriety of a downward adjustment is determined by comparing the acts of each participant in relation to the relevant conduct for which the participant is held accountable and by measuring each participant's individual acts and relative culpability against the elements of the offense." Ramos-Torres, 187 F.3d at 915. Reduction for a defendant's role in an offense is not warranted when the defendant "was not sentenced upon the entire conspiracy but only upon his own actions." Id.

The district court held Speller accountable only for the drugs she personally distributed, i.e., 50 grams of cocaine base, and assessed a base offense level of 33. The district court found no legal basis to reduce Speller's base offense level for Speller's role in the offense, because Speller was not being held accountable for drugs other conspirators distributed. The district court noted that, if Speller were held accountable for the drugs other conspirators had distributed, her base offense level would be much higher than 33. The record supports the district court's observation.

King's conduct involved over 1.5 kilograms of cocaine base, and the district court sentencing Herbert held him accountable for 21,454.66 grams of marijuana, 5,188.2 grams of cocaine, and over 1.5 kilograms of cocaine base. Speller did not object to these facts reported in her Presentence Report (PSR). Accordingly, the district court was free to accept the PSR as true for sentencing purposes. See United States v. Young, 272 F.3d 1052, 1055 (8th Cir. 2001) ("[U]nless a defendant objects to specific factual allegations contained in the PSR, a district court may accept the facts as true for purposes of sentencing.").

Speller asks the court to consider only 50 grams of cocaine base in calculating her base offense level, and then asks the court to consider all the other drugs involved in the conspiracy in determining her role in the offense. Speller's construction would result in a double reduction to her base offense level and would be contrary to the Sentencing Guidelines. See McCarthy, 97 F.3d at 1574. An additional reduction for Speller's role in the offense was not warranted, and we find no error in the district court's denial of this reduction.

## III.  CONCLUSION

Because the district court did not err in denying Speller a minor role reduction, we affirm.

_____